Filed 9/11/25  P. v. Earley CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B338402 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23CJCF00650) |
| v. | |
| LARRY EARLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin P. Stennis, Judge.  Affirmed.

Christina Vanarelli, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

# INTRODUCTION

Larry Earley appeals from the judgment entered after his conviction by a jury of second degree robbery (Pen. Code, § 211) and attempted carjacking (§§ 664, 215, subd. (a)).[1]  Earley's sole contention is that the trial court abused its discretion by denying his motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Offense and Charges*

On December 7, 2023, Earley approached Blanca Santiago's car outside her home, as she sat in the driver's seat sending text messages.  Earley opened the driver's side door, and Santiago asked in Spanish if she could help him.  Earley reached inside the car, and attempted to take Santiago's keys out of the ignition.  When she grabbed the keys, Earley hit Santiago in the face several times and then took her cellphone out of her hand.  Santiago honked her horn and yelled for help.  Santiago's sister and brother-in-law were nearby, and her brother-in-law responded and pulled Earley away from the car.  Santiago's sister asked Earley to give the phone back, and he did.  Santiago sustained swelling to her face from Earley's punches to her face.

The district attorney filed a felony complaint charging Earley with one count of second degree robbery (§ 211), one count of attempted carjacking (§§ 664, 215, subd. (a)), and alleging several prior felony convictions.

---

[1]    Undesignated statutory references are to the Penal Code.

B.      *Competency Proceedings*

Earley's pretrial probation report noted an "indication/claim of significant physical/mental/emotional health problem," explaining:  "According to [the Justice Data Interface Controller system], on May 12, 1993, the defendant was admitted to Patton State Hospital.  According to [the Consolidated Criminal History Reporting System], the defendant is classified as 'mentally disturbed.'"

On December 13, 2023, Earley was a "miss-out" at his scheduled arraignment.[2]  The minute order reflects the court ordered an "[e]xtraction and safety chair."

On January 2, 2024, in advance of the preliminary hearing, Earley's attorney declared a doubt regarding Earley's competence to stand trial, and the trial court set a competency hearing in mental health court.

On January 16, Dr. Dustin Stephens evaluated Earley and concluded that Earley was not presently competent to stand trial but that treatment with antipsychotic and mood stabilizing medication would likely make him competent to stand trial. Dr. Stephens reported Earley demonstrated "unwarranted irritability and rigid, inflexible thinking" during the interview. Dr. Stephens also noted Earley disclosed a history of "'a few' prior psychiatric hospitalizations" due to a "history of 'hearing voices and depression.'"  Earley also complained to Dr. Stephens about the medication he received in jail, stating it was not working and he "need[ed] to get back on my Seroquel and Wellbutrin like I usually take."

---

[2]      "Miss-out" refers to a defendant who is in custody but is not brought to court for a hearing or other proceeding.  (See *People v. Howze* (2001) 85 Cal.App.4th 1380, 1389.)

3

The prosecutor requested a second opinion, and on January 24, psychiatrist Sharon Guo evaluated Earley. Dr. Guo concluded Earley met "DSM-5 criteria [for] various substance use disorders (related to alcohol, PCP, stimulants, and/or other psychoactive substance)" but was competent to stand trial. Dr. Guo stated, "The acute withdrawal period has passed but he still has some emotional and behavioral difficulties." She lacked sufficient information to diagnose him with a psychotic disorder, but reported he complained of "suicidal ideation and auditory hallucinations," including daily voices that encouraged him to harm himself or others, or to "cuss people out." Dr. Guo noted Earley said he wanted to go to trial and potentially represent himself. She stated Earley presented with "irritability and some behavioral problems," poor impulse control, difficulty with enunciation due to missing teeth, and his "insight and judgment were limited," but she concluded "it is likely that he can also conform to expected behavior in the courtroom."

On February 15, 2024, Earley's attorney submitted on Dr. Guo's report, and the mental health court found Earley competent to stand trial. Criminal proceedings were reinstated in Department 35, where the case remained through completion of the preliminary hearing.

C. *Earley's* Faretta *Motions*

On February 16, 2024, Earley was in lockup at the courthouse before his scheduled preliminary hearing, and "there was repeated loud banging coming out of the lockup." The trial court asked a sheriff's deputy attending to Earley whether it was "a danger" to bring Earley out from lockup. The deputy stated "yes," based on Earley's behavior. The trial court decided not to

4

bring him out, and noted the court was aware Earley wanted to represent himself.

On February 29, 2024, Earley and his attorney appeared for the preliminary hearing, and Earley requested to represent himself. Earley's counsel asked the trial court to "revisit the pro per issue so [Earley] can be pro per if he'd like to be on the next court date and make that decision then." Earley interjected unsolicited comments into the hearing several times, interrupting counsel and the court, resulting in the court admonishing him: "Please stop." "Hold on a second, please." "Please stop. Not yet." The court told Earley, "I'm just giving you a warning you can't have outbursts in court," and explained that was "one of the things I take into account" in determining whether Earley could represent himself at trial. When the court told Earley he would need to fill out a *Faretta* form and the hearing would be put on that afternoon, Earley expressed frustration that his *Faretta* hearing would have to take place later in the same day stating, "No, I don't want to come back at 1:30 [p.m.]. I don't want to stay here all day." The court explained Earley's counsel was needed in another courtroom, but Earley interrupted again. The court then stated, "Stop. Remember I told you, you can't have outbursts . . . [T]hat's the second warning."

Earley then requested a new attorney instead of proceeding to a *Faretta* hearing. The court held a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and denied the motion. During the *Marsden* hearing, the court continued to warn Earley to stop interrupting defense counsel and the court. The court noted it was keeping track of the number of times it had warned Earley to refrain from speaking. After the *Marsden* hearing, a sheriff's deputy stated for the record that Earley "was taken out

5

of court due to his outbursts.  He could not follow basic court rules, and, for safety reasons, he's going to be transported back to custody."  The court continued the preliminary hearing.

On March 1, 2024, Earley and an attorney standing in for his appointed counsel appeared for Earley's continued preliminary hearing.  The hearing proceeded without Earley renewing his previous *Faretta* motion.  Although he was represented by counsel, Earley personally objected several times, resulting in the court warning:  "[W]hat I need you to understand is that you have an attorney representing you. . . . You need to remain silent.  And if you continue to state things, as you are doing, you could be subject to removal from the courtroom.  So I'm marking this down as warning number one."  When Earley continued objecting, the court stated, "You need to stop.  That's warning number two."  Earley responded by stating a witness was "lying," pointed at the witness on the stand, and stated "I'm going to bite your ass into the fire."  The court repeated, "Sir, you need to stop right there, and there's certainly not going to be any threats . . . I'm going to give you one more warning."  The trial court concluded the preliminary hearing and held Earley to answer on both charges, at which Earley commented, "This is bullshit, man."

Earley was arraigned on March 22, 2024 and pleaded not guilty.  A pretrial conference was set for April 10 in Department 128, where the case remained until trial.

At the pretrial conference, Earley initially indicated he wanted to keep his attorney and try to do an unspecified treatment program instead of prison, then Earley stated he wanted to represent himself after counsel said the treatment program would not apply to him.  The trial court provided Earley

6

with the written form for his *Faretta* request and commenced a *Faretta* hearing the following day.

At the *Faretta* hearing on April 11, 2024, Earley submitted a written waiver of his right to counsel, and the trial court continued the hearing to review the previous competency reports. The court explained that although Earley may have been found competent to stand trial, it needed to separately determine whether he was competent to represent himself.

On April 16, 2024, the trial court initially stated it thought the motion was "maybe . . . close, but it hasn't gotten to that line, so there is no basis for me to deny his request to represent himself" due to Earley's lack of competency to represent himself. The court explained: "In this case, it's clear that Mr. Earley has significant mental health challenges, and he is on medications to deal with those. And it's also clear that he's been irritable, aggressive at times, easily angered, at times has poor impulse control, and there are behavioral problems and rigid thinking. But I am not able to conclude that those problems constitute severe mental illness to the point that he can't carry out the basic tasks needed to present a defense without help of counsel."

The trial court nevertheless urged Earley to "see if there's a way to come up to a solution" with his current attorney. Earley became agitated during the ensuing discussion and again interrupted the court. The court cautioned him that it had not yet ruled on his *Faretta* motion, and "if you are not going to obey the court rules . . . , then I don't know if that is going to work out." After Earley interrupted the court twice more, the court told him: "Sir, I'm going to cut you off right now. Stop raising your voice at me, and don't interrupt me when I'm speaking to you or when others are speaking in the courtroom, or frankly, sir,

I'm increasingly concerned about whether *Faretta* works for you. . . . I don't know. I'm not convinced that you're able to abide by the court's rules if you represent yourself. . . . You need some time to cool down a little bit, sir." The court stated it would continue the hearing to the next day, which apparently upset Earley. Earley raised his voice and told the court twice he would "file a 170.6 on your ass"—i.e., a peremptory challenge under Code of Civil Procedure section 170.6. The court noted for the record that Earley verbally resisted being removed from the courtroom by the bailiff, continued to "speak out of turn," and that his raised voice could still be heard through the closed door to the lockup after Earley left the courtroom.

Earley refused transportation to court the next day. The court issued an extraction order and continued the case to April 18, 2024. On April 18, the bailiff reported Earley was becoming agitated in the courthouse lockup, so he was not brought into the courtroom, and the court again continued the matter.

On April 23, 2024, the trial court denied the *Faretta* motion. The court observed "[t]his is the third or fourth hearing date we've set for the *Faretta*," and expressly incorporated by reference "each of the previous hearing dates that we've had on this matter so any reviewing court could review each of those, not just today's hearing alone." The court explained it "was leaning towards granting the request until I saw the in-court appearance." The court stated that both competency reports noted Earley had "problems of a significant nature" with rigidity and inflexible thinking, "above and beyond just the severe mental illness that he suffers from." The court noted Earley's repeated outbursts and speaking over the court "when the issues were not

8

going his way," his "screaming even through the closed door" when he was taken back to lockup, his refusal of orders to come to court, and the way "the first hearing devolved into a screaming match with Mr. Earley repeatedly interrupting me and resorting to highly rigid, inflexible thinking" on a factual issue. The court concluded "[t]his problem seemed to me to be from severe to extreme in the inflexible thinking when things were not going his way." The court also observed it could understand less than half of Earley's words when he became upset, "which is frequently."

Earley's counsel noted for the record that Earley had "asked to go pro per since the moment I had met him." His counsel stated that Earley's "colloquy with . . . Department 35 would tend to lead a reasonable person to believe that while it might be a little bit daunting to give him his pro per status," Earley did coherently answer questions about the criminal process, exhibiting traits "that go towards going to pro per." Counsel further stated that although "the court is well within its purview to recognize the things he's doing physically in the courtroom," Earley's "trigger" is when "things aren't going his way," and "if he was to be pro per, the outbursts might be less."

The court ultimately ruled as follows: "I have given this a fair amount of thought, and I think that the problems exhibited in the courtroom of which there was kind of an early foretelling of them in the two psychiatrists' reports do trigger *People vs. Johnson* . . . . He suffers, as . . . the psychiatrists have described, from severe mental illness. And barring [sic] from their comment and also what I've seen in the courtroom, that these severe problems are to the point that he cannot carry out the basic tasks needed to present a defense without help of counsel."

9

D.    *Trial and Sentencing*

Before trial, Earley requested and received a new attorney, then subsequently made another *Marsden* motion, which was denied.

The case was tried before a jury in May 2024.  Earley renewed his *Faretta* motion on the first day of trial, and it was denied.  The jury found him guilty of second degree robbery (§ 211) and of attempted carjacking (§§ 664, 215, subd. (a)).  Earley admitted one prior "strike" conviction.  (§ 667(b)-(i).)  The trial court sentenced him to state prison for four years on the robbery and three years for the attempted carjacking, but stayed the attempted carjacking sentence under section 654.

Earley timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

A criminal defendant has a Sixth Amendment right to self-representation at trial if he or she "voluntarily and intelligently" waives the right to assistance of counsel.  (*Faretta, supra,* 422 U.S. at p. 807; 835-836; accord, *People v. Joseph* (1983) 34 Cal.3d 936, 943.)  *Faretta* and its progeny establish that, upon a timely motion, a defendant has the "right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173 (*McKaskle*); accord, *People v. Welch* (1999) 20 Cal.4th 701, 734 (*Welch*).)

But "[t]here are limits on the right to act as one's own attorney, and "'*Faretta* itself and later cases have made clear that

the right of self-representation is not absolute.'" (*People v. Butler* (2009) 47 Cal.4th 814, 825; see *Indiana v. Edwards* (2008) 554 U.S. 164, 171-172.) A trial court has "discretion to deny self-representation to gray-area defendants" who are competent to stand trial but "lack the mental health or capacity to represent themselves at trial." (*People v. Johnson* (2012) 53 Cal.4th 519, 523, 528 (*Johnson*); see *Edwards*, at p. 178 [courts may deny self-representation "for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves"].) A trial court also has discretion to deny or terminate self-representation if "a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation." (*Welch, supra,* 20 Cal.4th at p. 735.)

"To minimize the risk of improperly denying self-representation to a competent defendant, 'trial courts should be cautious about making an incompetence finding without benefit of an expert evaluation, though the judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding and should be expressly placed on the record.'" (*Johnson, supra,* 53 Cal.4th at pp. 530-531.)

"The trial court possesses much discretion when it comes to terminating [or denying] a defendant's right to self-representation and the exercise of that discretion 'will not be disturbed in the absence of a strong showing of clear abuse.'" (*Welch, supra,* 20 Cal.4th at p. 735.) "The trial court's determination regarding a defendant's competence must be upheld if supported by substantial evidence," with deference to the trial court's discretion "especially appropriate" when "the

11

same judge has observed the defendant on numerous occasions." (*Johnson, supra,* 53 Cal.4th at pp. 531-532.) The erroneous denial of a *Faretta* motion is reversible per se. (See *People v. Becerra* (2016) 63 Cal.4th 511, 520; *People v. Best* (2020) 49 Cal.App.5th 747, 756 (*Best*).)

B. *The Trial Court Did Not Abuse Its Discretion by Denying Earley's* Faretta *Motion*

Earley contends the trial court abused its discretion by denying his motion to represent himself at trial because he satisfied the requirements for a *Faretta* waiver, the record does not support the conclusion that he suffered from a "severe mental illness," and his courtroom behavior did not justify the trial court's denial of his *Faretta* motion.[3]

We conclude Earley's belligerent and disruptive behavior was a sufficient basis to deny his motion for self-representation at trial. As noted, *Faretta* requires that a defendant both "knowingly and intelligently forgoes his right to counsel" *and* be "able and willing to abide by rules of procedure and courtroom protocol." (*McKaskle, supra,* 465 U.S. at pp. 173-174.) The California Supreme Court has held that denial of a motion for self-representation at trial is appropriate "when a defendant's conduct prior to the *Faretta* motion gives the trial court a reasonable basis for believing that his self-representation will create disruption." (*Welch, supra,* 20 Cal.4th at p. 734.) In *Welch*, the high court concluded the trial court did not abuse its

---

[3] Earley's opening brief argues, "The trial court erred in denying Mr. Earley's *Faretta* motion on April 16, 2024," but the trial court actually ruled on his *Faretta* motion on April 23 due to Earley's behavior during the proceedings.

discretion by denying the *Faretta* motion of a defendant who "belligerently denied awareness of a calendar date that was set in his presence"; "turned his back on the trial court when addressing it"; "interrupted the trial court several times to argue what the court had declared to be a nonmeritorious point"; "accused the court of misleading him"; "refused to allow the court to speak"; and "refused several times to follow the court's admonishment of silence." (*Id.* at p. 735.) The trial court in *Welch* considered not only the defendant's conduct in preliminary proceedings before it, but also his conduct in pretrial hearings before two other judges. (See *id.* at pp. 730-731.)

Earley's conduct throughout the pretrial proceedings provided a reasonable basis for the trial court's finding that his self-representation would create disruption. Earley repeatedly interrupted the proceedings and caused them to be continued due to his uncooperative behavior. Earley interrupted counsel and the court while they spoke, despite repeated admonitions from the court to remain silent; he raised his voice in court and when removed from the courtroom could still be heard "screaming" behind a heavy door; he repeatedly delayed proceedings by refusing to be transported to court and by causing a disturbance in the courtroom lockup; and he threatened a witness on the stand while testifying and told the judge he was going to "file a 170.6 on your ass." "'The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.' [Citation.] . . . This rule is obviously critical to the viable functioning of the courtroom. A constantly disruptive defendant who represents himself, and who therefore cannot be removed from the trial proceedings as a sanction against

13

disruption, would have the capacity to bring his trial to a standstill." (*Welch, supra,* 20 Cal.4th at p. 734.) Further, we recognize that "the extent of a defendant's disruptive behavior may not be fully evident from the cold record, and that one reason for according deference to the trial court is that it is in the best position to judge defendant's demeanor." (*Id.* at p. 735.) Thus here, as in *Welch,* "while no single one of the above incidents may have been sufficient by itself to warrant a denial of the right of self-representation, taken together they amount to a reasonable basis for the trial court's conclusion that defendant could not or would not conform his conduct to the rules of procedure and courtroom protocol, and that his self-representation would be unacceptably disruptive." (*Ibid.*)

Earley argues that "the trial court did not base its denial on [his] courtroom disruptions," and thus the denial of his *Faretta* motion cannot be upheld on that ground on appeal. (See *Best, supra,* 49 Cal.App.5th at p. 763 ["Because the trial court did not deny defendant's *Faretta* motion on grounds of disruptiveness, we cannot here uphold the trial court's ruling on this alternate ground."].) Earley is incorrect because the trial court expressly based its ruling on "the problems exhibited in the courtroom" and "what I've seen in the courtroom." The court also expressly incorporated the previous hearings and considered Earley's prior behavior before Department 35. And where a trial court bases its *Faretta* ruling on both mental condition and on the ground that a defendant was disruptive, the defendant's "disruptive behavior he had exhibited in the courtroom prior to making that motion" may constitute sufficient basis alone for denial. (*Welch, supra,* 20 Cal.4th at p. 735; see *Best,* at p. 762.)

14

Further, here, unlike in *Best*, the trial court expressly relied on Earley's history of disruptive behavior throughout the pretrial proceedings, not just evidence of his mental illness. The court gave Earley several clear warnings before ruling that his behavior compromised his right to self-representation, and the court explained it "was leaning towards granting the request until I saw the in-court appearance." The court described Earley's outbursts in the courtroom and in lockup, his repeated interruption of counsel and the court when things "were not going his way," and his refusal to abide by court orders and admonitions. It concluded Earley had problems with rigidity and inflexible thinking, "above and beyond just the severe mental illness that he suffers from." The trial court was well within its discretion to conclude Earley "is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation." (*Welch, supra,* 20 Cal.4th at p. 735.) By contrast, in *Best* the court stated that, based on the record in that case, "[w]e might hesitate to find that the evidence here supported a denial of the *Faretta* motion on grounds of disruptiveness." (*Best, supra,* 49 Cal.App.5th at p. 761.)

Because we conclude Earley's disruptive behavior was sufficient for the trial court to deny his motion for self-representation, we need not also determine whether substantial evidence supports a finding Earley was a "gray-area defendant" competent to stand trial but "lack[ing] the mental health or capacity to represent [himself] at trial." (*Johnson, supra,* 53 Cal.4th at pp. 523, 528; see *McKaskle, supra,* 465 U.S. at p. 173.)

15

## DISPOSITION

The judgment is affirmed.

MARTINEZ, P. J.

We concur:

FEUER, J.

STONE, J.

16